I would like to reserve three minutes for rebuttal, if that's all right with the Court. Your Honors, there simply is no reason why a person exposed to land-based machinery should be allowed to recover, and those exposed to asbestos from the same machinery on sea should not be able to recover. What about the interest of uniformity? It seems like the MDL Court and the Sixth Circuit took that position. Well, the Sixth Circuit certainly took that position, and the MDL Court did take that position. I would point out to this Court that while the decisions, the most recent decisions, generally favor the denial of summary judgment in these cases, the reason that you don't see those cases in the Circuit are because appeals from the denial of summary judgment are not final orders, so they don't get to the Circuit. That's why there's really only one Circuit Court decision, and that's the Sixth Circuit. Hopefully, there will be another by this panel that is a different one. If we could just back up one moment. In looking at your briefing before us this round, the briefing deals with negligence. There's a footnote that seeks to try to incorporate the strict liability arguments previously made. True. But precedent does not permit briefing in that way. Have you waived your strict liability theory? And if not, why shouldn't we conclude you have by virtue of how you've chosen to try to present it? Well, again, this Court allowed us to appeal if we didn't like the decision below, and you remanded it for the lower court to consider negligence. We did thoroughly brief the case in our previous brief. We certainly did not intend to waive it, but we also didn't want to repeat the same arguments that we made and just copy and paste our previous brief. We wanted to address those arguments that the Court, we thought, wanted addressed in terms of negligence. So you're embracing strict liability now? We are. As well as negligent failure to warn, correct? Correct. Kind of turning back to what Judge Restrepo was saying, can you identify any case where these exceptions, shall we say, to the bare metal defense has been recognized where the theory being pursued by plaintiff was strict liability? I can't. So would you agree then there seems to be uniformity as it relates at least to the applicability of bare metal defense for strict liability? For maritime cases. Which is the only place we're at. Isn't this case a maritime case? We concede it's a maritime case, but under maritime law, this Court can embrace law from non-maritime courts. This is federal common law, so you are not bound by decisions in maritime law. You can look to non-maritime cases, and there are such. We cited them in our brief where the manufacturer was held liable under strict liability under state law for exactly the same kinds of exposures. And I would ask you to look to that. But to address the question that you addressed to me a year ago, you asked me, is this strict liability or negligence? And my answer was yes. And this really is a crossroads case because the negligence principles that we know of duty and foreseeability really apply to the 402A claim as well. Because what we claim is that this is machinery with asbestos-containing wear parts that the manufacturer knows is going to have to be replaced that is essential to the proper running of the machinery. What is your better argument, negligence or strict liability? Well, I would say based on the case law, probably negligence. And that certainly is buttressed in the record. We have lots of documents saying that they knew, they knew, they didn't want. And you don't have, as I understand your answer, any case under maritime law that has recognized this type of exception to the bare metal defense on a strict liability theory. I'm unaware of them. I've researched them. I'm unaware of them. But perhaps you should be the first, I think, if I can just drop back for a minute and talk about it. It is, you know, and the case law recognizes, some of the cases recognize that it's difficult to conceptualize a distinction between a negligence failure to warn theory and a products liability 402A case based upon failure to warn. It certainly is in this case. I would concede that. I think, though, that in terms of policy, and, again, I'm deferring to my own gray hair because I remember this so much in law school, is that the policy of products liability is to encourage manufacturers to be aware of product safety and have a continuing duty to warn and to improve their products to make them safe. And I think that that policy, when you think about it in terms of the large machinery that goes in power plants and on ships, that that policy comes into play here. Part of the problem, though, is what is their product? You know, part of the problem is if it leaves their plant without the asbestos in it, but it's expected it's going to contain asbestos, should they be held liable for what's to be expected? And you can see that perhaps better from a negligence standpoint than you can from a products liability standpoint. I would concede that that's so. On the other hand, that's such a good question. And, again, the answer is what is the product in this case? And the answer is it is the huge turbine, these huge boilers, the pumps, and the valves, as well as the components. They're all products under strict product liability theory. But the products that we are really talking about is those manufactured products. You're talking about the assembled product? Yes, the assembled product that requires those asbestos wear parts in order to function to specification. Why would you claim to not be barred given the government contractor's defense? Well, first, let me say that Judge Restrepo specifically did not address this argument. I'm talking to Judge Restrepo. I'm sorry. Judge Restrepo did not address this argument below. It was raised by three of the defendants. But the answer is he has addressed it in other cases, and I would cite – I wrote it down. Did he find an issue of fact in each of those cases? Yes, he found an issue of fact with the same experts, by the way, as we have in this case. Did any of those cases go to trial? Do you know? I believe the case settled. At least, I should say, there's no report of any trial in the case. But the answer is that the government's specifications defense is an affirmative defense. They have to prove it. We've got rebuttal evidence to that. It should go in front of the jury. Here's a problem I'm having on the uniformity aspect, and I think that is a policy consideration that comes into play in maritime law in particular, and that is that you have all of these asbestos cases, maritime cases, coming out of the Northern District of Ohio within the Sixth Circuit. And if we were to go – and I think that was an influential factor in Judge Rubino's analysis. So if we were to go the other way, what happens if these cases end up back in the Northern District of Ohio for trial? What law is going to apply at the directed verdict stage of the case? Well, first, those cases are undoubtedly over because once the summary judgment motions are decided, they typically are tried or dismissed or settled. But a trial would be back in Ohio. It would be back in Ohio, but they probably have already gone or been appealed or not been appealed. Those cases are probably over. I know Connor and these other cases are over. The second factor is – I'm more concerned about these cases, the DeVries case and the McAfee case. Sure. And I think that more important than uniformity is to get it right. Well, where would DeVries and McAfee be tried? Didn't they come out of Pennsylvania? They're Eastern District cases. They're not Ohio cases. Pennsylvania. Pennsylvania. Yeah, they are Pennsylvania Eastern District cases. You're asking for an exception to the bare metal defense. Articulate the test that you would ask us to create if you could. Oh, I'm asking for more than that. You want more than an exception? Oh, I'm asking you to say that the bare metal defense is wrong. What is the test then for liability? I'm glad you asked me that because the answer is When a manufacturer of machinery places a product into the stream of commerce with asbestos wear parts, which are necessary to the proper functioning of that machinery, which will have to be foreseeably replaced during the life of that machinery, then the manufacturer must warn the end users of the hazards of asbestos dust during the replacement process, regardless of the identity of the seller and maker of those replacement products. What is the policy reason to support that sort of test? You've added a foreseeability component. That's not necessarily present in some of the other cases. I'm going to call it an exception to the bare metal defense. Okay. Because that's what those cases, they're not annihilating it. They're making an exception to it. Well, I wouldn't mind seeing it annihilated. I understand that might be your goal, but you want to impose this duty that is different than what the bare metal defense contemplates. What is the policy reason to do that? Well, the first is, under maritime law, protection of the sailor is more important than uniformity. That's the number one policy. This protects sailors best. Number two, it makes manufacturers more responsible for the safety of their products. The manufacturer of the larger product should not be able to walk away from it once it's sold when the life of that product is 20 years or more, and that these asbestos wear products are going to have to be replaced fairly often. In the case of the insulation on a turbine, turbine's got to be inspected once a year, so you've got to somehow move that insulation so that somebody can look at the turbine. The third thing is that by imposing liability, you allow the fact finder to more closely apportion liability between the manufacturer of those asbestos wear products and the designer and seller of the major product requiring those wear products. But I thought one of the problems in these cases is you don't know who the supplier was of those wear products. Many times one does not. So how would that be a helpful argument for your test? Well, when both of those manufacturers are identified, the fact finder can decide who or what is responsible in a fair way, and we don't have to impose it all on one or all on the other. You get everybody trying to find the same facts in the same manner. Okay. Unless you have other questions, I'll sit down. I'm going to have one question, and then we can ask you to sit down. Okay. There's a recent case out of the District of South Carolina by Judge David Norton, and don't expect you to be familiar with it. Cheshire. Cheshire, you are familiar with it. And the test, he says, the plaintiff must show one defendant actually incorporated asbestos-containing components into its original product and to the defendant specified the use of asbestos-containing replacement components or such components were essential to the proper functioning of the defendant's product. Do you read that test? Yes. Conjunctive test. Oh, yes, and that is apparent in the record of this case. Okay. Thank you. Thank you. Good afternoon, Your Honor. May it please the Court. Chai Goretsky with Jones Day representing the defendants. I'd like to pick up on three points from your colloquy with Mr. Myers. I'd like to talk about uniformity, negligence, and strike liability and how they interact. And lastly, I'd like to address the various tests that were discussed at the end of Mr. Myers' argument. First of all, with respect to uniformity, uniformity is important here at multiple levels. Uniformity between the Third Circuit and the Sixth Circuit, uniformity in MDL proceedings, but also uniformity within maritime law. But how can you say there's uniformity if we took account of the circuit? District court judges falling on different lines of the bare, I'm going to use again this exception to the bare metal defense nomenclature, sorry, where you have seven ruling one way, 12 ruling another way. How is it, and that's judges, not cases. How can you say there's uniformity on this subject? So there's some disuniformity among district courts. As you know, one district court decision doesn't even bind another district judge within that same district. At the circuit level, which is what binds all courts within the Sixth Circuit, and obviously what you rule will bind all courts within the Third, you would be creating a circuit split that's far more significant than disuniformity in isolated district court cases. And that trumps the interest of the sailor. Well, the interest of the sailor is one consideration in maritime law. What should we give more weight to? In this case. In maritime law, the interest of the sailor or uniformity? Well, both are important in maritime law generally, but in this particular case. Which should we weigh more heavily? In this particular case, uniformity weighs more heavily because we are not undermining the interest of the sailor. The interest of the sailor does not mean maximized recovery. And in this case, interest of sailors can be protected. There are asbestos trust funds that can pay out hundreds of thousands of dollars for these sorts of injuries. It is true that many of the asbestos manufacturers have gone through bankruptcy. Some have emerged from bankruptcy. So we are not leaving sailors without a remedy. But the harm to the uniformity interest of maritime law and the predictability and consistency interest of maritime law would be significant if you were to adopt Mr. Meyer's rule. And so the uniformity interest of maritime... How significant would it be in that I'm assuming these asbestos products are no longer out there, correct? So most of these cases of surface, they're going to surface. Well, I don't think that that is necessarily true given the long latency period for these asbestos-related diseases. The asbestos cases are still coming. Many are filed every single day. So there is very much a future for asbestos litigation. But the other uniformity interest that I want to emphasize is uniformity interest within maritime law. And what I mean by that is uniform results in different cases. We are relying on Lindstrom, right? We're all talking about Lindstrom in the Sixth Circuit. Lindstrom doesn't discuss failure to warn. It discusses strict liability and negligence. So how does that give us uniformity in a failure to warn context? I believe that there were failure to warn claims. There were claims, but that's not what the opinion addressed. And so I was wondering if you have a view on that subject. So it has certainly been interpreted within the Sixth Circuit as being binding law on negligent failure to warn claims as well. Whether it specifically addresses those in as fulsome a manner as you might like to see, maybe it doesn't, but that is Sixth Circuit precedent as the district courts within the Sixth Circuit have interpreted it. You just told us those district court opinions aren't binding on anybody. I'm sorry? You just said that those district court opinions aren't binding on anybody. No, that's true, but I'm using those as an illustration of how the Sixth Circuit opinion has been read given Judge Schwartz's question about what the Sixth Circuit opinion means. But it's been read differently in other jurisdictions. It has been interpreted differently in other jurisdictions, but within the Sixth Circuit, which is where it's applied, it is consistently applied to extend to negligence claims. And what you're being asked to do here is to create a circuit split reaching the opposite result for courts within the Third Circuit. The uniformity point that I want to emphasize, though, the tests that have been fashioned by some of the courts that have adopted the sorts of rules that Mr. Myers is advocating lead to highly fact-specific results that are inconsistent. If you look, for example, at the Dummett test out of the New York Court of Appeals, which adopts a standard based on whether asbestos was required, the only way that the requirement there is assessed is with reference to consumer preference, consumer budget, like how much a consumer can spend on a particular item. What if requirement isn't requirement but specified by the manufacturer? At the time the product was put into the stream of commerce, there was a specification or an instruction by the manufacturer, use asbestos. Would you agree that that should be a circumstance where use of asbestos would be inevitable and liability should rest with the manufacturer? No, and let me make two points on that. One related to the rule that you're advocating and the other related to the fact of this particular case. With respect to the rule, saying that a manufacturer specified the use of asbestos is simply another way of saying that the manufacturer had some reason to think that asbestos would be used. But then it would be inevitable that, yes, it had a reason to think it would be used, so shouldn't it be responsible for that which it tells its consumer to use? It might have had a reason to think that it would be used, but it's important to emphasize that it would not be inevitable. It's always the decision of the later user and of a later manufacturer of asbestos whether to supply asbestos or whether to come up with something else. But isn't it fundamental for them to warn potential users that using this product is, and the same question that Jim Schwartz just asked you in the context of failure to warn. The problem, though, with imposing a warning in that situation is that fundamental tort law does not require you to warn about somebody else's product, even if you can foresee that that product might be used with yours. And specification is just another form of foreseeability because if you specify it, you have reason to believe that somebody will follow that specification, but you don't know that they will. And on the facts of this case, if I could take us to the Navy context here, it wasn't the manufacturers, the defendants, who specified the use of asbestos. It's undisputed that that was a Navy specification. The Navy chose to use asbestos at the time that these defendants supplied their products to the Navy. The Navy later chose not to use asbestos. The same products are in use today without asbestos. What if the manufacturer knew, again, at the time it's placed into the stream of commerce, that to properly function, the product needed asbestos? Under those circumstances, should the manufacturer impose a duty to warn? No, because what properly function is inherently a subjective determination to be made by the user. The Navy decided... What if it could only work? I won't use proper... It could only work if you had an asbestos product. If the manufacturer knew it at the time it put it into the stream of commerce, it would only function with it. So to be clear, when you say it would only work, you mean the device would not turn on without asbestos. I am asking you only to function as intended by the intended consumer. Only function. If that was the only way it would function, are you saying you have no duty to warn there? You have no duty to warn, and one of the reasons is the intended consumer will have, as the Navy did here, preferences and options that change over time. The Navy might have specified when these defendants supplied their equipment that at that time it wanted to use asbestos. That's your government contractor defense. I'm talking about the manufacturer's decision-making. No, but I'm trying to answer it at the manufacturer decision-making level because, first of all, the manufacturers here didn't decide to specify asbestos. The Navy specified it, and second of all, the manufacturers didn't know 10, 15, 50 years down the road whether the Navy would still be using asbestos, and the manufacturers did nothing to specify the use of asbestos at that time. That's all a matter of consumer preference. Let me also try to give another non-asbestos example that may illustrate the problems with these sorts of specified or required tests, which really are contrary to fundamental tort law outside of the asbestos context. Imagine that my daughter's battery operated like a children's toy. It will not turn on without batteries installed in it, and it is supplied by the manufacturer with batteries installed in it. As we all know, batteries can have a tendency to leak over time, and in changing out the batteries, you can get hurt by a leaking battery. Nobody would think, certainly no state court of which I am aware has held, that if I later replace the original battery with an identical battery to the one that the manufacturer supplies, and that battery leaks, that the toy manufacturer is liable for that injury. The reason for that is that the toy manufacturer didn't control my later choice to put in a different battery, the same battery, to retire the toy. The original manufacturer didn't control my choice to do that, nor did the original manufacturer control the battery manufacturer's decision to continue making a battery that might leak. As a matter of basic tort precedent, and as a matter of the fairness inherent in basic tort law, no court holds as a matter of state law that the toy manufacturer is liable in that situation. By analogy here, whether or not the defendants knew to some degree that asbestos would later be used, the undisputed facts are the defendants here are not the ones who supplied the asbestos that actually injured the plaintiff. They're not the ones who made the choice to use that. They're not the ones who had the incentive to create a safer product, which over time was in fact developed. Should we be thinking of this bare metal defense in terms of a policy limitation or a policy judgment with respect to the causation analysis? Should we be thinking of this as a limitation of proximate cause, or is that the wrong way to look at this? I think that the duty and the causation inquiries here, in a sense, could be two sides of the same coin. On the one hand, if you look at it as a duty inquiry, traditional tort law says there is no duty to warn about somebody else's product. If you think of it as a proximate cause inquiry, which I think is another fair way to look at it, the proximate cause of the plaintiff's injury in a case like this is the decision of a later user and a later manufacturer to use asbestos. Either way, it leads you to the same result. So there is no theory under which a plaintiff could recover if a manufacturer made a piece of equipment. It would only work with this dangerous item. Under those circumstances, there is no obligation to warn the end user, hey, this dangerous item is a dangerous item. From your point of view, there should never be a duty to give any warning. There should be a duty to warn with respect to your own product. But what if the use of that component part was inevitably had to be used? It was the only way the product would work. So that takes me back to the toy example. I don't think that in that situation the toy manufacturer is required to warn. It would be held liable for not warning about a later battery replacement. But let me also emphasize how far removed that is from this case because these products today are in use without asbestos. That's undisputed. And there's evidence in the record. If you look, for example, at Joint Appendix 408 of the original Joint Appendix from the original DeVries case, that Buffalo Pumps in the early 1980s was moving away from the use of asbestos and wanted to no longer supply asbestos to the Navy. The Navy at that point made the decision that it wanted at that point to continue to use asbestos. So there is no such thing, certainly not in the context of a long-lasting product on a ship like this, as the inevitable use of asbestos in the future. The manufacturer simply does not know that and does not have control of that. When should there be a duty to warn then under your scenario, under your parameters? When is there a duty to warn ever imposed on the manufacturer? There is a duty to warn for what the manufacturer itself puts into the stream of commerce, assuming that the other elements of a negligence test are satisfied. And so, for example, in the case of a turbine, if it were some part, the turbine has a propeller and the propeller has a sharp edge or something, you might have a duty to warn about that, setting aside government contract or defenses or anything like that. You have a duty to warn about the things that you put into the stream of commerce because those are the things that you can control, that you can make safer, and that you directly profit from. How do you reconcile that view with some of the case that talks about the fact that the component manufacturer and the equipment manufacturer are interconnected in some way? They kind of each have an interest in ensuring the other is available to make big products and then have replacement parts that are needed. And why isn't that enough of an economic reason to keep them both equally responsible? A couple of points in response to that. First of all, that would apply equally to the toy example. The toy manufacturer has an interest in making sure that there are batteries available, that nobody, no court holds the toy manufacturer liable for the batteries. Second of all, an economic interest is not the test in tort law. What tort law is designed to do is to shape behavior. But economics does come into it. I think in your briefs you talk about costs, or at least the cases you cite talk about who's got the burden to absorb the costs for taking care to be sure others aren't injured. So economics comes into this, no? Sure, but the fundamental purpose of tort law is to make sure that people aren't injured in the first place. Then why isn't there a duty to warrant? In this circumstance where the product goes out into the stream of commerce with a dangerous item, why isn't there a big, by the way, in this product there is asbestos? Because the duty to warrant, well, first of all, the duty to warrant attaches to the manufacturer that actually has the ability to control the conduct of the manufacturer that causes the injury, which may be a separate manufacturer. If your question is why wasn't there a duty to warrant in this case with respect to any asbestos that was originally supplied, that's not an issue that's presented here. We have, of course, defenses to that, including the extent of the manufacturer's knowledge about the dangers of asbestos at that time. The Navy had far superior knowledge at that point. I'm aware. I think we know what your position is on the knowledge component and who is responsible for directing the warnings. We got that. Thank you. I know my time has expired. If the Court would like to hear it. I'm assuming that you completely disagree with the Court's analysis in both Bell and the Cheshire cases. Yes. It got it wrong. Well, so Bell got it wrong in a way that's actually different than how other courts even got it wrong. Bell viewed this as a negligent misrepresentation type of claim. The plaintiffs here have an alleged negligent misrepresentation, nor could they satisfy the elements of it because for a negligence claim where we're talking about duty running to a particular individual or a particular entity, the relevant entity would be the Navy. I don't think there's any argument that the Navy was relying on the defendant's representations about asbestos. Again, I realize my time has expired. If I could briefly touch on negligence versus strict liability because I think it's an important point. Negligence and strict liability theories rise and fall together here because the common thread for both negligence and strict liability is the defendant can only be liable with respect to its own product. And so for strict liability purposes, if the defendant puts a defective product into the stream of commerce, it's per se liable. And that's true regardless of whether the plaintiff was ever in privity with the defendant. For negligence purposes, you have to have privity in order to have a duty, and you have a mental state requirement in terms of the duty of care. But again, the duty of care only attaches to one's own product. And that's the fundamental thread that I think ran through Judge Rebrano's opinions in these cases from Connor through the opinion on remand from this court earlier, that negligence and strict liability rise and fall together because a duty attaches and strict liability attaches only to the product that the manufacturer put into the stream of commerce, has the ability to control later, and has the ability to make safer. I just have one follow-up question, and that is based upon Judge Rebrano's understanding that under maritime law, the product is limited to what the manufacturer placed in the stream of commerce. Yes, that's right. And, well, it's under maritime law, but that is also black-letter tort law. Well, how do you reconcile Schwartz, Judge Rebrano's opinion, and Schwartz with your argument? So Schwartz, of course, was a state law opinion. I disagree with his reading of Pennsylvania law there. That's not an authoritative decision under Pennsylvania law, meaning it's not from Pennsylvania's highest court. He did come to a different conclusion. He did come to a different conclusion under Pennsylvania state law. But, again, this is, of course, a maritime law case where the uniformity interests, the predictability and consistency interests all matter greatly. Thank you. Thank you. Mr. Myers? I have some very brief rebuttal, and a mea culpa. I wrote down the name of the case that Judge Rebrano decided with regard to the government's tax defense in my rebuttal section of my argument. It is Willis v. BWIP. I think he covered it, and you'll see this. I disagree with my learned opponent's reading of both tort law and strict liability law. I think that it is much broader than my opponent has advocated, but I think that Judge Vanaski's question about what is the product in this case is a really important one, because the answer is that there are multiple products, and you have to think about the one large product as well as its components and its where components. And I come back to the touchstone of foreseeability. I think that that is the key thing in this case, and that underlies all the cases that favor plaintiffs. So is your adversary incorrect when he says this duty of care only runs to one's own product? And if he's wrong, how is he wrong? What law says that he's correct? It does run to his own product. The product is the large product, and that which is going to inevitably be replaced. In his example of the batteries, batteries are generally not regarded as dangerous, and even if they leak, they're not regarded as dangerous. Well, I've gotten some of the leakage on my hands sometimes. I'm still alive and kicking, and probably nothing's going to happen to me. That's not true with asbestos. Asbestos is dangerous. It causes the cancers that cause my clients to die in this case. But the product that you've described as the big turbine or the big piece of equipment, the item that caused the injury were these replacement parts. Yes. The replacement parts, as I understand this record, there's no way to tie those replacement parts to any of the defendants. Other than DeLaval in one of the cases, that's right. Okay. So what theory of tort law allows you to hold these defendants responsible for an item they didn't make? Because they knew that it was a component of their product that was going to have to be replaced during the extended life of the product. Is there anything outside these asbestos cases that appears we all have been taking a look at outside this context where that reliability has been imposed upon the original manufacturer for the component part that they never supplied? Certainly in the design and crash-worthy tests of cars and airplanes. And in failure to warn land. Those are not failure to warn cases. Those are design defect cases. But the concept is that it goes beyond that original component  You don't have to have privity. So I think that that concept is there, if not the failure to warn. If the court has no further questions, I'll sit down. Thank you. Thank you very much. I will ask that counsel get together with Ms. Motto and make arrangements to have a transcript of the argument prepared and split the cost evenly, all right? I'd like to see this. Thank you. All right. Thank you all very much. Court is now adjourned.